# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **Dylan MacDaniel Bates and** | ) Case No. 20-60982-can7 |
| **Erin Melissa Smither,** | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |

## MEMORANDUM OPINION AND ORDER OVERRULING CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTORS' AMENDED CLAIM OF EXEMPTIONS [ECF No. 15]

Dylan Bates and Erin Smither are married individuals, residents of Missouri. No one disputes that before they filed a joint chapter 7 bankruptcy late last year, Ms. Smither was the "head" of their family of two working adults and one minor child, based on her relatively higher income. Like many during the pandemic, however, Ms. Smither found herself unemployed after her job was eliminated.[1] She had not regained employment as of the date of filing but was drawing unemployment compensation. She nonetheless claimed a "head of family" exemption in a car titled solely in her name, and the chapter 7 trustee ("Trustee") objected. The issue in this case is whether the Trustee met his burden to prove that Ms. Smither was no longer the "head" of her family given her unemployment. The court concludes that, under the circumstances of this case, the fact Ms. Smither was receiving less income than her husband as of the date of filing is insufficient to prove Ms. Smither lost her "head of family" status, given that relative income is only one of the applicable factors a court must consider.

---

[1] The record does not reflect why Ms. Smither's job was eliminated, only that her job was eliminated during the pandemic.

*Factual & Procedural Background*

The debtors scheduled two cars in their Schedule A/B, both owned solely by Ms. Smither. Ms. Smither fully exempted one car using her Missouri $3,000 car exemption.[2] Against the other car, Ms. Smither claimed a $600 wild card exemption (not in dispute here)[3] and $1,650 as head of the family.[4] The Trustee timely objected,[5] asserting that she was not the head of her family as of the date of filing, because her income from unemployment compensation was less than her husband's income from employment.

The Schedule I reveals that Ms. Smither was receiving $1,280 in monthly unemployment compensation as of the date of filing, and that her eligibility for unemployment was expected to expire during the month of the bankruptcy filing. The Schedule I also revealed that Mr. Bates' net income from employment was significantly more than his wife's. The parties did not dispute that Ms. Smither had been the head of her family in the year before she filed bankruptcy, nor that her gross income in the year of the bankruptcy filing exceeded her husband's. She had not, however, regained employment as of the date of filing, nor as of the date of subsequent briefing and oral argument.

At the initial hearing, the parties agreed to waive the right to put on evidence and to submit the matter on briefs and oral argument.[6] After the final hearing, the court took the matter under

---

[2] Mo. Rev. Stat. 513.430.1(5).
[3] Mo. Rev. Stat. § 513.430.1(3).
[4] ECF No. 12.
[5] Fed. R. Bankr. Proc. 4003(b)(1).
[6] At the initial hearing, the court asked the parties whether Mr. Bates claimed any interest in the car and whether, if so, he intended to claim a head of family exemption in the car if the court determined that Ms. Smither was not the head of the family (since, otherwise, we would all be wasting our time). In response to this colloquy, the parties requested the right to submit supplemental briefing and the court set a briefing scheduling as well as a final hearing. The court apparently misled the parties to believe that it was asking for briefing on whether Mr. Bates had an interest in the car based solely on his marital status. The debtors' supplemental brief concedes that Mr. Bates has no interest in the car and therefore may not claim an exemption in property he does not own. At the final hearing, however, after the court clarified its thinking, debtors' counsel requested the right to put on evidence; the court denied that request since the right had been waived and it would have been to the prejudice of the Trustee. ECF No. 54.

advisement.[7] Notably, Mr. Bates has not claimed that he is head of the family and has not asserted he owns any interest in either car, even though he apparently drives and needs one of the cars for his employment.[8]

*Discussion*

Missouri has opted out of the federal exemption scheme, leaving debtors with only those exemptions allowed under state law or federal non-bankruptcy law.[9] Mo. Rev. Stat. § 513.440 authorizes a Missouri "head of a family" to "select and hold, exempt from execution, any other property" up to $1,250 plus $350 for each dependent child.[10] The Trustee does not dispute in this case whether the debtors constitute a family but only whether Ms. Smither is still the "head."[11] As

---

[7] No party disputes that the court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 157(a) and (b). This is a core proceeding that this court may hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

[8] In their reply brief, the debtors conceded that because Mr. Bates has no ownership interest in the vehicle, he cannot claim any exemption in it, regardless of whether he is the head of family. *See In re Thorpe,* 251 B.R. 723 (Bankr. W.D. Mo. 2000) (holding that debtors must have an ownership interest in personal property to claim an exemption in it).

[9] Mo. Rev. Stat. § 513.427; *In re Diedrich*, No. 17-30225, 2017 WL 6568051, at *2 (Bankr. W.D. Mo. Dec. 22, 2017).

[10] Section 513.440 provides in full: Each head of a family may select and hold, exempt from execution, any other property, real, personal or mixed, or debts and wages, not exceeding in value the amount of one thousand two hundred fifty dollars plus three hundred fifty dollars for each of such person's unmarried dependent children under the age of twenty-one years or dependent as defined by the Internal Revenue Code of 1986, as amended, determined to be disabled by the Social Security Administration, except ten percent of any debt, income, salary or wages due such head of a family.

[11] A family has been defined as "a collective body of persons who live in one house under one head or manager." *Jarboe v. Jarboe*, 106 Mo. App. 459, 79 S.W. 1162, 1163 (1904) (citations omitted). Missouri courts have traditionally adopted an expansive view of what constitutes a family for purposes of various exemption statutes, so long as the collective body is of a permanent and domestic character, as opposed to abiding temporarily as strangers. *See, e.g., In re Diedrich*, 2017 WL 6568051, at *2 (Bankr. W.D. Mo. Dec. 22, 2017) (construing "family" under § 513.440 to include a grandmother raising grandchildren); *In re Townsend*, 344 B.R. 915, 917–18 (Bankr. W.D. Mo. 2006) (construing "family" under § 513.440 to include an unmarried, same-sex couple with children); *In re Swigart*, 339 B.R. 724, 727 (Bankr. W.D. Mo. 2006) (holding that the concept of "family "usually entails the support of a spouse and/or dependent children and means that a single person with no dependent children does not qualify for the exemption," but holding that a debtor living with his mother and mother and 20–year–old brother could qualify as a family; in the *Jarboe* case, a collective consisting of a man, his mother, two minor brothers, and an invalid sister were held to constitute a family.

3

the objecting party, the Trustee bears the burden of proving that Ms. Smither is not entitled to claim her head of family exemption.[12]

Although Missouri courts take an expansive view of what constitutes a "family," courts have struggled with who may be the "head" of that family. In some of the earlier cases, the head of a family was described as "one who contracts, supervises, and manages the affairs about the house, not necessarily a father or a husband."[13] Later Missouri cases focused in addition on the obligation of the "head" to support the other members of the family, as well as those other members being "dependent" on the "head," such as in this quote from a 1950s-era Missouri Supreme Court decision:

> To constitute a 'family' within the meaning of the homestead laws there must be two or more persons residing together under one head or manager, with the legal or moral obligation on the part of the person who occupies the position as head of the house or family *to support one or more of the other members, and there must be a state of dependency, at least partial, on the part of the one receiving such support*. The family relationship must be of a permanent and domestic character, and the living together must not be merely a temporary expedient rendered necessary or desirable by reason of temporary conditions.

(emphasis added).[14]

One court, in considering this definition, lamented of the antiquated notion of a single "head of a family," quipping: "'Father Knows Best' and 'Leave it to Beaver' are off the air, and the modern household is far more egalitarian than the ostensibly autocratic, male-dominated households of yore."[15] But given that this court is duty-bound to follow Missouri courts in the

---

[12] Fed. R. Bankr. P. 4003(c); *In re Diedrich*, 2017 WL 6568051, at *1 (citing *In re Swigart*, 339 B.R. 724, 727 (Bankr. W.D. Mo. 2006)).
[13] *Jarboe*, 79 S.W. at 1163 (quoting *Ridenour-Baker Grocery Co. v. Monroe*, 142 Mo. 165, 43 S.W. 633 (1897)).
[14] *State v. Haney*, 277 S.W.2d 632, 636 (Mo. 1955).
[15] *Townsend,* 344 B.R. at 918.

4

interpretation of a Missouri statute, and that Missouri law allows only one "head of a family," the court will return to determining whether Ms. Smither satisfies that definition.[16]

The Trustee argues that Ms. Smither cannot be the head of her family because she provided less economic support than did her husband as of the date of the filing, when exemptions are determined. In considering whether the person claiming to be the "head" provides adequate support to the family, courts may look at factors such as: whether the person provides substantial economic support to the household; filed as head of household on income tax returns; listed sufficient expenses on schedules to support the family; or claimed the other family members as dependents on the Schedule J.[17] As mentioned previously, courts also look to whether the debtor claiming the exemption "controls, supervises and manages the affairs" of the family.[18] "The determination is based primarily on economic considerations and the exemption is designed to contribute to the preservation of the family unit."[19] Nevertheless, "head of a family status is not determined solely on the basis of who makes the largest financial contribution to the children's support."[20]

Here, it is undisputed that Ms. Smither was the head of her family in the year of the bankruptcy filing based on her relatively higher income.[21] It is also undisputed that her gross

---

[16] "Nevertheless, only one party may claim the moniker and benefits of head of household for exemption purposes." *Townsend,* 344 B.R. at 918.

[17] *In re Diedrich*, 2017 WL 6568051, at *2 (citing *See Swigart*, 339 B.R. at 728–29).

[18] *In re Townsend*, 344 B.R. 915, 917 (Bankr. W.D. Mo. 2006) (citing *Ridenour–Baker Grocery Co. v. Monroe*, 142 Mo. 165, 43 S.W. 633, 634 (1897)).

[19] *Swigart*, 339 B.R. at 728.

[20] *In re Murrell*, 588 F.2d 1207, 1209 (8th Cir. 1978) (holding, nevertheless, that the debtor was not entitled to the exemption because she did not provide a home for her children, did not assume a significant share of the responsibility of the everyday care and supervision of the children, did not make a substantial financial contribution to their care when measured against her income, and did not fulfill her obligations under the divorce decree).

[21] The other support-related factors are, at best neutral. With respect to the second factor, that of status on tax returns, neither debtor claimed head of household in the year of the bankruptcy filing because each filed "married filing separately" on their 2019 tax returns, although Ms. Smither claimed the child as a dependent on her separate tax returns. The third and fourth factors, relating to expenses and the claiming of a dependent on the Schedules I and J, typically only come into play when only one member of the family files bankruptcy claiming to be the head. Here, the Schedules I and J reflect joint income and joint household expenses, with one dependent child.

income in the year of the filing exceeded her husband's, even though he earned more as of the date the bankruptcy petition was filed, in November 2020. The issue thus is whether Ms. Smither lost her status as "head" when her job was eliminated, approximately five months before the filing, such that she was no longer the head of her family the day she and her husband filed bankruptcy.

Notwithstanding the hundreds of cases over the span of 200 years involving the interpretation of the phrase "head of a family" in various Missouri exemption statutes, the court did not find any case stating that merely losing a job "dethroned" Ms. Smither of her status as the head of her family.[22] Given that support is only one of the factors, and that as of the date of filing Ms. Smither was still providing support – albeit reduced – to her family, it was incumbent on the Trustee to provide some other evidence that Ms. Smithers no longer controlled, supervised or managed the affairs of her family.

The court construes exemptions liberally in favor of the debtor.[23] As the Eighth Circuit said in when it held that a divorced father who was performing "his legal and moral obligation" to support his minor children living with their mother should be entitled to claim the status as head of a family under the Missouri exemption laws:

> The definition of any word or phrase must be considered in the factual context in which it is used or applied. Similarly any decisional construction of the phrase "head of a family" must be viewed in the light of the circumstances to which it is applied. No Missouri case has undertaken to enunciate an all-inclusive precise definition of the phrase and it may well be that the phrase is incapable of an all-inclusive precise definition, *particularly in view of the manifold factual circumstances that can develop in this field*.[24]

(emphasis added).

---

[22] *See Ridenour–Baker Grocery Co. v. Monroe*, 142 Mo. 165, 43 S.W. at 634 ("Reduced to a simple proposition, the question is, does the fact that an adult daughter is a part owner of the premises in which her parents reside, but does not reside with her parents, but aids her brother in supporting them, constitute her the head of a family, so as to entitle her to claims said premises as her homestead? By the same token her brother is also a head of the family, and the natural head, the father, is dethroned. It is not too plain for argument that Miss Monroe did not control, supervise, or manage the family affairs of her father's house.")

[23] *See Murray v. Zuke,* 408 F.2d 483, 487 (8th Cir. 1969).

[24] *Id.*

6

The "manifold factual circumstances" of this case demonstrate this: although Mr. Bates was earning more income than his wife the day they filed bankruptcy, the inquiry does not end there. The Trustee conceded that Ms. Smither qualified as head of family as late as July 2020, before the bankruptcy filing in November 2020. There is no question that she contributed substantially to the household finances in 2020. She claimed the child as a dependent on her 2019 taxes. She was drawing unemployment compensation and looking for another job. There is no evidence that she had ceased "controlling, supervising and managing" the household and its finances. And, there is no evidence that Mr. Bates had assumed that role from his wife.

Missouri's exemption statute allows only one of these debtors to claim the head of family exemption, and only one of these debtors has done so. The result might be different if there were a relatively permanent change in family dynamics. But this court does not view the status of head of family, once established in one person such as Ms. Smither, as automatically shifting back and forth just because one spouse loses a job, or gets a promotion, or experiences any of the many changes that occur in modern families, in the absence of evidence to that effect (or a change in the law recognizing only one "head" of a family at a time ).[25]

ACCORDINGLY, because the court concludes that the Trustee has not met his burden of proving that debtor Erin Smither does not qualify as head of family under § 513.440 of the Missouri

---

[25] *Compare In re Dufva*, 388 B.R. 911, 914 (Bankr. W.D. Mo. 2008) (A person can have but one domicile, which when once established, continues until he renounces it and takes up another) (cites omitted). *See also In re LaFond*, 791 F.2d 623 (8th Cir. 1986) (holding, in the context of the tools of trade exemption, that where a debtor is not "currently" engaged in farming when the bankruptcy case is filed, courts should take into account the intensity of a debtor's past farming activities and the sincerity of his intentions to continue farming); *In re Schissler*, 250 B.R. 697, 700 (Bankr. W.D. Mo. 2000) ("[O]ccupancy is not an absolute prerequisite to a valid claim of a homestead exemption; alternatively, the debtor may establish a valid homestead exemption claim if there is "a bona fide intention of making the premises a homestead or permanent residence of a family.") (citing *State v. Haney,* 277 S.W.2d 632, 637 (Mo.1955).

Statutes, the Trustee's objection to exemptions [ECF No. 15] is OVERRULED, and her claimed exemption in the 2013 Smart Fortiva is ALLOWED.

IT IS SO ORDERED.

/s/ Cynthia A. Norton
U.S. Bankruptcy Judge

Dated  April 6, 2021